IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT NEWSOME, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-01050-STA-jay |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**ORDER DENYING § 2255 PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Petitioner Robert Newsome has filed a motion to vacate, set aside, or correct his sentence (the "Petition") pursuant to 28 U.S.C. § 2255. (ECF No. 1.) For the following reasons, the Petition is **DENIED**.

**BACKGROUND**

In January 2017, a federal grand jury sitting in the Western District of Tennessee charged Petitioner and others in a sixteen-count indictment with narcotics distribution in violation of 21 U.S.C. §§ 841(a)(1) and 846. (*United States v. Newsome*, No. 1:17-cr-10003-STA-3, ECF No. 2 (W.D. Tenn.).) The Court appointed William Morrow to represent Newsome. (*Id.*, ECF No. 263.)

On September 18, 2018, Newsome pleaded guilty pursuant to a written plea agreement to Count 1 of the indictment, which charged him with conspiracy to distribute and possess with intent to distribute fifty grams or more of actual methamphetamine. (*Id.*, ECF No. 348 & 349.) By the agreement, Newsome waived his right to appeal, except in three narrow circumstances, and to

bring collateral challenges to his sentence under § 2255, except for "claims relating to prosecutorial misconduct or ineffective assistance of counsel." (*Id.*, ECF No. 349 at 4.) For its part, the Government agreed to dismiss the remaining counts, "not seek an enhancement under 21 United States Code § 851," and "recommend that the defendant receive a full reduction for acceptance of responsibility" and a sentence "at the low end of the applicable guideline range."[1] (*Id.*, ECF No. 349 at 2, 3.) The parties stipulated that "the most readily provable amount of drugs for which the defendant should be held accountable equate[d] to at least 10,000 kilograms but less than 30,000 kilograms of marijuana equivalency." (*Id.*, ECF No. 349 at 2.)

During the plea hearing, the undersigned conducted the Rule 11 colloquy, *see* Fed. R. Crim. P. 11, making certain that the Defendant understood the charge to which he was pleading guilty, the minimum and maximum penalties, the rights he was giving up by pleading guilty, and the basics of sentencing. (*Id.*, ECF No. 387.) The prosecutor provided the factual basis for the plea. Newsome confirmed that he entered into the plea agreement freely and voluntarily following review of the document with his attorney and that he was in fact guilty of the crime to which he was pleading guilty.

In anticipation of sentencing, the United States Probation Office prepared the presentence report (the "PSR").[2] (*Id.*, ECF No. 364.) The PSR recommended a base offense level of 34 under the Guidelines. (*Id.*, ECF No. 364 at ¶ 43.) The PSR advised that the Defendant was a career offender because the offenses to which he pleaded guilty were committed subsequent to his sustaining at least two felony convictions for either a controlled substance offense or a crime of

---

[1] The plea agreement's reference to the "guideline" refers to the United States Sentencing Commission *Guidelines Manual* (the "Guidelines" or "U.S.S.G.").

[2] The probation office produced a first and second addendum to the PSR after it was issued. (*See* No. 1:17-cr-10003-STA-3, ECF No 364-2 & 378.) References herein to the PSR include the addendums.

violence.  (*Id.*, ECF No. 364 at ¶ 49 (citing U.S.S.G. § 4B1.1).)  Newsome's first career offender predicate was comprised of two 2005 Tennessee convictions for "Possession of Marijuana with Intent to Sell and/or Deliver," that were treated as a single career offender qualifier, and two 2011 Tennessee convictions for the same offense, also merged into a single career offender predicate. (*Id.*, ECF No. 364 at ¶ 49.)  Three points were deducted for his acceptance of responsibility.  (*Id.*, ECF No. 364-2 at 1.)  Based upon a total offense level of 34 and a criminal history category of VI, the Guideline imprisonment range was calculated to be 262 to 327 months' incarceration.  (*Id.*, ECF No. 364-2 at 1.)

On March 6, 2019, defense counsel moved for permission to withdraw his representation. (*Id.*, ECF No. 371.)  Counsel explained in his motion that, "[o]n February 25, 2019, [he] accepted an offer of employment from the United States Attorney's Office for the Western District of Tennessee for the position of Assistant United States Attorney in the Jackson, Tennessee, Criminal Division Branch Office."  (*Id.*, ECF No. 371 at 1.)  Counsel further represented that he "believe[d] that he should withdraw as counsel for Defendant" "in order to avoid any potential conflict of interest in this case."  (*Id.*, ECF No. 371 at 1.)  The Court granted the motion (*id.*, ECF No. 372) and appointed Lee Howard Gerald as the Defendant's new attorney (*id.*, ECF No. 373).

A sentencing hearing was held on May 17, 2019.  (*Id.*, ECF No. 379.)  Counsel objected to application of the Guidelines' career offender provision and argued for a downward variance from the applicable Guidelines range.  (*Id.*, ECF No. 386 at 5, 45.)  Counsel called three of Newsome's family members to testify on his behalf.  (*Id.*, ECF No. 386 at 22-37.)  The undersigned found that Newsome qualified as a career offender and that his resulting Guidelines incarceration range was 262 to 327 months, as found in the PSR.  (*Id.*, ECF No. 386 at 8-9.)  Upon consideration of the parties' arguments, the witness testimony, the advisory range, and the sentencing factors set forth

in 18 U.S.C. § 3553(a),[3] the undersigned varied downward from the range and imposed a sentence of 220 months' incarceration and five years of supervised release.  (*Id.*, ECF No. 386 at 66.) Judgment was entered the same day.  On direct appeal Newsome argued that he did not qualify as a career offender in light of *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc) (per curiam).  (*See id.*, ECF No. 392 at 2.)  The Sixth Circuit dismissed the appeal due to the waiver provision in the plea agreement.  (*Id.*, ECF No. 392.)

## DISCUSSION

Newsome filed the Petition on March 4, 2020.  Liberally construed, the pleading presents two claims.  Claim 1 alleges that counsel rendered ineffective assistance by negotiating a plea agreement that, through its appellate waiver provision, forfeited Petitioner's right to take a direct appeal to challenge his career offender status under *Havis*.  Claim 2 posits that counsel was ineffective during the plea negotiation stage because he was laboring under a conflict of interest. Respondent United States of America filed a response on April 23, 2020, arguing that Newsome is not entitled to relief on either claim.  (ECF No. 12.)  Petitioner filed a reply on May 18, 2020, reiterating his belief that counsel was ineffective at the plea stage by negotiating a plea agreement containing an appellate waiver.  (ECF No. 14.)   Petitioner also filed, without permission, a

---

[3] Pursuant to 18 U.S.C. § 3553(a), a court must reach an appropriate sentence by considering "the kinds of sentence and the sentencing range" under the advisory Guidelines and "policy statements," as well as the following additional factors: "the nature and circumstances of the offense and the history and characteristics of the defendant; . . . the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[,] . . . to afford adequate deterrence to criminal conduct[,] . . . to protect the public from further crimes of the defendant[,] and . . .  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; . . . the kinds of sentences available; . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and . . . the need to provide restitution to any victims of the offense."  18 U.S.C. § 3553(a).

supplemental reply.  (ECF No. 15.)  Although the reply and supplemental reply raise issues not presented in the Petition, they primarily reiterate Petitioner's position that counsel was ineffective at the plea stage by negotiating a plea agreement containing an appellate waiver.[4]

## I.   Legal Standards

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted).  "In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (internal quotation marks omitted).  "[N]o hearing is required," however, "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id.*  A petitioner has the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel alleges an error of constitutional magnitude cognizable in a § 2255 proceeding.  *See id.*  Such a claim is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Id.* at 966.  To succeed on an ineffective-assistance claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient" and (2)

---

[4]  Insofar as the reply and supplemental reply advance claims not presented in the Petition, those issues are not properly before the Court and are disregarded.  *See United States v. Pineda-Parada*, No. 5:13-cv-07309-JMH-HAI, 2014 WL 7405700, at *4 (E.D. Ky. Dec. 30, 2014) (petitioner's arguments were waived because they were first asserted in his reply) (citing *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010)).

"that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693) (citations omitted). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

## II.     Claim 1

Petitioner asserts in Claim 1 that counsel was ineffective for having negotiated a plea agreement containing an appeal waiver because the waiver precluded him from taking a direct appeal to challenge his sentence under *Havis*. He acknowledges that *Havis* was not issued until after judgment in his case was entered, but he alleges that counsel knew at the time of the plea

agreement "that Havis was to be decided in the near future." (ECF No. 15 at 6.) The gist of the argument is that counsel should have anticipated the holding in *Havis*. The position is not well taken.[5]

The Tennessee drug statute under which Petitioner was twice convicted provides in relevant part that

> (a) It is an offense for a defendant to knowingly:
>     (1) Manufacture a controlled substance;
>     (2) Deliver a controlled substance;
>     (3) Sell a controlled substance; or
>     (4) Possess a controlled substance with intent to manufacture, deliver or sell
>     the controlled substance.

Tenn. Code Ann. § 39-17-417(a)(1)-(4). "'Deliver' or 'delivery' means the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship[.]" Tenn. Code. Ann. § 39-17-402(6).

The Guidelines define "controlled substance offense" as

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b).

To determine if a conviction constitutes a controlled substance offense, a court must "apply a 'categorical' approach," which focuses on the statute under which the petitioner was convicted, rather than the petitioner's conduct. *United States v. Gibbs*, 626 F.3d 344, 352 (6th Cir. 2010) (citing *Taylor v. United States*, 495 U.S. 575, 600 (1990)). If the statute is "divisible," meaning it

---

[5] A hearing is not necessary as to either claim as they are belied by the record and unsupportable under existing precedent.

describes multiple offenses, the court may "employ the 'modified categorical approach.'" *United States v. House*, 872 F.3d 748, 753 (6th Cir. 2017) (quoting *Descamps v. United States*, 570 U.S. 254, 257 (2013)).  That approach permits the examination of "a limited class of documents" from the defendant's prior criminal case in order "to determine which alternative formed the basis of the defendant's . . .  conviction." *Id.* (quoting *Descamps*, 570 U.S. at 257).  The Supreme Court in *United States v. Mathis*, 579 U.S. 500 (2016), clarified that a statute is divisible if it lists alternative elements, not alternative means of satisfying one or more elements. *Mathis*, 1579 U.S. at 505.  If the statute lists alternative means, then it is "indivisible," and resort to the limited class of documents is prohibited. *Id.* at 509.

Under either approach, the "second step" in a court's analysis is to "determine whether the offense, as described either by the entirety of an indivisible statute or by the relevant alternative of a divisible statute, matches §4B1.2(b)'s definition of a 'controlled substance offense.'" *United States v. Pittman*, 736 F. App'x 551, 554 (6th Cir. May 31, 2018).  If the elements do not match, the prior conviction cannot be counted toward the defendant's career offender status. *Id.* at 555.

In *Havis*, the Sixth Circuit, sitting en banc, "decided that [the defendant's] Tennessee conviction for delivery of a controlled substance" under Tenn. Code Ann. § 39-17-417(a)(2), "was *not* a controlled-substance offense under the guidelines." *United States v. Garth*, 965 F.3d 493, 497 (6th Cir. 2020) (emphasis in original) (citing *Havis*, 927 F.3d at 387).  The court "reached that result because 'the parties agree[d] that the least culpable conduct' Tennessee delivery proscribes is 'attempted delivery,' but the guidelines' definition covers only the controlled-substance offenses listed in the definition (which are all completed crimes), not the attempted versions of those offenses listed in the Sentencing Commission's commentary." *Id.* (alteration in original) (quoting *Havis*, 927 F.3d at 385, 387).

8

The Sixth Circuit has "repeatedly held that counsel is not ineffective for failing to predict developments in the law, unless they were clearly foreshadowed by existing decisions." *Snider v. United States*, 908 F.3d 183, 192 (6th Cir. 2018) (citing *Thompson v. Warden, Belmont Corr. Inst.* 598 F.3d 281, 288 (6th Cir. 2010) (collecting cases); *United States v. Freeman*, 679 F. App'x 450, 453 (6th Cir. 2017)).   A court must "assess counsel's performance based on counsel's perspective at the time, considering all the circumstances, rather than in the harsh light of hindsight."   *Snider*, 908 F.3d at 192 (6th Cir. 2018) (internal quotation marks and citations omitted).

Newsome cannot show that counsel performed deficiently by failing to anticipate *Havis*' holding.   Petitioner's criminal case began with the filing of the indictment in January 2017, proceeded to the change of plea in September 2018, and concluded with the imposition of the sentence and entry of judgment in May 2019.   *Havis* was decided one month after judgment was entered and less than one year after Petitioner pleaded guilty.   Nevertheless, through the entirety of Newsome's criminal case, Sixth Circuit precedent held that § 39-17-417 categorically described controlled substance offenses.   *See e.g., United States v. Douglas*, 563 F. App'x 371, 378 (6th Cir. 2014) ("Section 39-17-417 is a categorical controlled substance offense.").   Indeed, the Sixth Circuit reaffirmed that ruling just one year before Newsome entered his guilty plea.   *See United States v. Alexander*, 686 F. App'x 326, 727-28 (6th Cir. 2017) (per curiam) (applying *Douglas* and holding that the Tennessee offense of possession-with-intent-to-sell was "a controlled-substance offense under the career-offender guideline.")   *Havis* was therefore not clearly foreshadowed by existing precedent.   Given this legal landscape, it was not outside the bounds of reasonable professional assistance for counsel to advise Petitioner that his Tennessee convictions qualified him as a career offender.

9

But even assuming counsel performed deficiently, Petitioner suffered no prejudice. More to the point, the Sixth Circuit held post-*Havis* that the crime defined in subsection (a)(4) of the Tennessee drug statute is categorically a controlled substance offense under the Guidelines. *See United States v. Graham*, 824 F. App'x 332, 335-36 (6th Cir. 2020) (citing *Garth*, 965 F.3d at 497) (defendant's Tennessee conviction for possession of drugs with intent to manufacture, deliver, or sell was categorically a controlled-substance offense under the Guidelines). The court explained that the possession-with-intent felony "is a completed crime, not an attempted one that *Havis* puts beyond the guidelines' reach." *Garth*, 965 F.3d at 497. Claim 1 is therefore **DENIED** for Petitioner's failure to establish either part of *Strickland*'s test.

## III.    Claim 2

Petitioner asserts that counsel rendered ineffective assistance during plea negotiations because he was laboring under a conflict of interest. Newsome points to the fact--documented by counsel's motion to withdraw--that counsel applied for and obtained a position as an assistant United States Attorney while he represented Newsome. Petitioner surmises that counsel, in "negotiat[ing] a plea agreement . . . which . . . placed an impediment" to his taking a direct appeal, was engaging in "self-preservation" in order to secure a position as a prosecutor. (ECF No. 14 at 6.) He posits that in the absence of the conflict, he would have been able to take a direct appeal on the basis of *Havis*' holding. Respondent argues that the claim is without merit. The Court agrees.

A criminal defendant "has a Sixth Amendment right to conflict-free representation by his counsel." *Gillard v. Mitchell*, 445 F.3d 883, 890 (6th Cir. 2006) (citing *Smith v. Anderson*, 689 F.2d 59, 62–63 (6th Cir. 1982)). "A conflict arises 'when the defense attorney . . . [is] required to make a choice advancing his own interests to the detriment of his client's interests." *Blackwell v. United States*, 2009 WL 6315322, at *49 (S.D. Ohio Sept. 22, 2009) (quoting *United States v.*

10

*Horton*, 845 F.2d 1414, 1419 (7th Cir. 1988)), *report and recommendation adopted*, No. CIV. 2:08-CV-00168, 2010 WL 1257872 (S.D. Ohio Mar. 30, 2010).  "[I]f the conflict is as to a matter that is irrelevant or the conflict is merely hypothetical, there is no constitutional violation." *Moss v. United States*, 323 F.3d 445, 463–64 (6th Cir. 2003) (citing cases).  Except in cases where an actual conflict arises from concurrent representation, the petitioner must meet both prongs of *Strickland*'s test. *Lordi v. Ishee*, 384 F.3d 189, 193 (6th Cir. 2004) ("*Strickland . . .* is the controlling authority for an ineffectiveness claim based on a conflict of interest" that does not stem from "joint . . . or . . . multiple . . . representation"); *Zertuche v. United States*, No. 2:15-CV-02284-JPM-dvk, 2017 WL 6811994, at *15 (W.D. Tenn. Sept. 13, 2017) ("*Strickland* standard [was] controlling" where alleged conflict involved successive, rather than concurrent, representation) (citing *Lordi*, 384 F.3d at 193).

Newsome has not demonstrated that counsel performed deficiently.  For one thing,  the fact that counsel sought and obtained a position with the U.S. Attorney's Office during his representation created only a potential conflict.  In short, "[t]here is no presumption of a conflict merely because defense counsel sought or obtained employment with a prosecutorial office before, after, or during representation."[6] *United States v. Mobley*, No. 03-cv-01297-JDT-sta (W.D. Tenn.), ECF No. 17 at 13-13) (citing *Garcia v. Bunnell,* 33 F.3d 1193, 1199 (9th Cir. 1994) ("mere fact of [counsel's] future employment plans" with the same office prosecuting his client "did not create an actual conflict" of interest); *United States v. Horton*, 845 F.2d 1414, 1418 (7th Cir. 1988); *United States v. Unruh*, 855 F.2d 1363, 1379 (9th Cir. 1987)).  Secondly, counsel's negotiation of a plea agreement containing an appellate waiver was reasonable under the circumstances, and

---

[6]  Importantly, once Morrow accepted the job offer he sought to withdraw his representation and the Court allowed him to do so.

therefore undermines Petitioner's allegation that counsel's decision-making was infected by "self-preservation."  As Morrow explained in his affidavit, Petitioner faced the likelihood of substantial prison time:

> . . . I advised Mr. Newsome many times that, on certain counts in the Indictment (*i.e.*, Counts 1-2 and 13), he was facing a mandatory-minimum sentence of 10 years' imprisonment and a maximum sentence of life imprisonment.  Moreover, I advised him that, based on the applicable law at that time (and until the enactment of the First Step Act in December 2018), if the government filed an Information to enhance his sentence pursuant to 21 U.S.C. § 851, he would be facing a mandatory-minimum sentence of life imprisonment on the above counts.
>
> * * *
>
> I also provided Mr. Newsome with my opinion that, based on his prior convictions for possession of marijuana with intent to sell under Tenn. Code Ann. § 39-17-417(a)(4), he would qualify as a career offender under the United States Sentencing Guidelines. . . . I also informed him that, unlike the statutory mandatory-minimum sentence, the Court has the discretion to impose a sentence under the applicable career offender guidelines.  Thus, I advised him that if the Court found that he qualified as a career offender, he could still request that the Court impose a sentence below the applicable guideline range.

(ECF No. 13-1 at 3.)  In addition, counsel understood and communicated to his client that the Government typically required an appeal waiver but that it was willing, in exchange for the waiver and the guilty plea, to make substantial concessions.  (*Id.* at 4-5.)  Petitioner does not dispute these averments.

Also unavailing is Newsome's argument that counsel's conduct prejudiced him because the waiver precluded him from bringing a *Havis* claim on direct appeal.  As previously observed, even if Petitioner could have taken a direct appeal, he would not have prevailed under *Havis*.  Claim 2 is **DENIED**.

For all of these reasons, the Petition is **DENIED**.  Judgment shall be entered for Respondent.

## APPEAL ISSUES

A § 2255 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2)-(3).  A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)).  "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'"  *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition.  Because any appeal by Petitioner does not deserve attention, the Court **DENIES** a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  Fed. R. App. P. 24(a).  However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court.  *Id.*

In this case, for the same reason it denies a COA, the Court **CERTIFIES**, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith.  Leave to appeal *in forma pauperis* is therefore **DENIED**.[7]

**IT IS SO ORDERED**.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: January 3, 2023

---

[7] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.

14